Undoubtedly public policy was a strong ingredient in the passage of this statute. That is, it was as much an object in its passage to punish the defendants for their wrongful acts, neglects and carelessness in causing the death of a person, and to keep them constantly admonished of the consequences of such acts, as to compensate the plaintiffs for their injuries resulting from such death. And it is not discovered by a fair construction of the whole statute, giving the first section its proper scope and evident meaning, as well as the second section, how this is to be done, if the damages are to be special and confined to the pecuniary injuries of the parties to be benefited in bringing the action. Many cases could be easily imagined where punitive damages against the defendants would be most imperatively called for, to answer the ends of public justice, in punishing, as far as damages could do it, the gross and unmitigated conduct of the defendants in causing death; while the next of kin whom the plaintiff represents, would not be perhaps able to show any direct or indirect *pecuniary* injury to themselves. The reported decisions hold that nominal damages only could be recovered in such a case. The practical results of the verdicts of the juries, however, appear thus far to be in accordance with justice and right, looking full as much at the liability of the defendants as to the pecuniary injury of the plaintiff's next of kin. And as a remedial statute, such a construction of it would seem to be as proper and beneficial to the parties interested in bringing the actions, as one which would wrench it out of joint to extort from it a cause of action, which it appears it does not possess, in order to make it survive against the defendants' legal representatives.—[RE-PORTER.

---

# SUPREME COURT.

## DORMAN WARREN and ELLSWORTH H. HYDE, Survivors, &c., agt. GEORGE TIFFANY.

An order for publication of the summons and all subsequent proceedings including the judgment in this action, were set aside with costs on the grounds: 1st. That the only evidence of the defendant's non-residence for a fraudulent intent, appeared by an affidavit of the sheriff, who stated, "that after the summons was put into his hands to be served, he went to the defendant's residence in said town of Bristol, (Ontario county, New-York,) and was then informed by his family and other persons residing near the residence of the defendant, that he had been absent from home since about the first of November previous, (then May, 1858,) and had not since been home; that when last heard from he was at the city of Nashville, in the state of Tennessee, and that deponent believes that said Tiffany is absent from the state of New-York for the purpose of defrauding his creditors."

*Held,* that this was no evidence whatever that the defendant had departed from the state with intent to defraud his creditors, or to avoid the service of summons, or that he kept himself concealed within the state with the like intent.

2d. The order for publication did not direct a copy of the summons and complaint to be deposited in the post-office, directed to the defendant at his place of residence as required by § 135 of the Code.

And 3d, it did not appear that any attachment against the property of the defendant had been issued in the action.

*Monroe Special Term, September,* 1858.

MOTION on behalf of the defendant to set aside the order of publication of the summons, and all subsequent proceedings thereon, including the judgment entered in the action for irregularity, with costs.

JNO. T. GARDNER, *for defendants.*
SPENCER GOODING, *for plaintiffs.*

WELLES, Justice. The action was commenced by publication of the summons, in pursuance of an order of the county judge of Ontario county, bearing date May 24th, 1858. The affidavits upon which the order was made, show that the defendant was at the time a resident of this state, and do not show that such residence was neither known to the party applying for the order, nor could with reasonable diligence be ascertained by him; but on the contrary, they do show expressly that the defendant's residence was in the town of Bristol in the county of Ontario. It appeared by the affidavit of the sheriff which was presented to the judge when applied to for the order, that after the summons was put into his hands to be served, he went to the defendant's residence in said town of Bristol, and was then informed by his family and other persons residing near the residence of the defendant, that he had been absent from home since about the first of November previous, and had not since been home. That when last heard from, he was at the city of Nashville, in the state of Tennessee. The sheriff's affidavit concludes as follows: " And that deponent believes that said Tiffany is absent from the state of New-York for the purpose of defrauding his creditors." The

action was brought to recover the amount of a promissory note made by the defendant. There is nothing in the papers tending to show that the defendant had departed from the state with intent to defraud his creditors, or to avoid the service of summons, or that he kept himself concealed within the state with the like intent, except this extract from the sheriff's affidavit, which is no evidence whatever. It is not the statement of any fact, but is simply the belief of the sheriff, unsupported by any fact whatever touching the occasion or intent of the defendant's absence. The affidavits wholly failed, therefore, in showing a case for the order for publication. The order did not direct a copy of the summons and complaint to be deposited in the post-office, directed to the defendant at his place of residence, as required by section 135 of the Code. The motion papers show that no attachment against the property of the defendant has been issued in the action.

The plaintiff proceeded upon the order by publication of the summons for six weeks in the two newspapers designated in the order, after which he procured the usual order of reference, and entered judgment upon the report of the referee for $258.38 damages, with costs of the action.

The order for publication and all the subsequent proceedings, including the judgment, were clearly irregular, and must be set aside. The affidavits did not show a case for commencing the action by publication, and for that reason the order was unwarranted. In case evidence had been given showing that the defendant's absence was with intent to defraud his creditors or to avoid the service of a summons, it should have directed a copy of the summons and complaint to be deposited in the post-office directed to the defendant at his place of residence. The omission to do that was a fatal irregularity. Again, the judgment was irregular in consequence of the plaintiffs' omitting to attach the defendant's property, as it could in no event affect any property of the defendant, except such as had been taken by virtue of an attachment regularly issued in the action.